## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

CATHERINE LEAPHART                                                    PLAINTIFF

v.                                    No. 4:10CV02035 JLH

TYRONE WILLIAMSON, in his official capacity as
Mayor for the City of Russellville, Arkansas;
CLIFF KIRCHNER; PHILLIP CARRUTH;
FREDDIE HARRIS; BILL EATON;
ROBERT WILEY; KEVIN FREEMAN;
RANDAL CROUCH; GARLAND STEUBER;
and LARRY HOLMAN, individually and
in their official capacities                                          DEFENDANTS

### OPINION AND ORDER

Catherine Leaphart brings this action against the previous Mayor and City Council members

of Russellville, Arkansas, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

(2006); 42 U.S.C. § 1981 (2006); 42 U.S.C. § 1983 (2006); and the Age Discrimination in

Employment Act, 29 U.S.C.A. § 623(a) (West 2008), alleging that the defendants discriminated

against her on the basis of race and age.  Leaphart also asserts various state law claims.  The

defendants have moved for summary judgment.[1]  The motion for summary judgment will be granted

in part and denied in part.

On February 2, 2010, Christi Williams resigned as Director of Human Resources for the City

of Russellville.  The City posted a job advertising the position and received more than twenty

applications.  The Mayor and his assistant selected five applicants, including Leaphart, and the City

Council interviewed each of these applicants in the Mayor's presence.  Pursuant to Ordinance

No. 1632 and Ark. Code Ann. § 14-42-110 (Repl. 1998), the Mayor had the final authority to hire

---

[1] The Court previously dismissed Leaphart's claims against Williamson in his individual
capacity.  Document #31.

and fire department heads, such as the Director of Human Resources, subject to a two-thirds veto by the Council.

Although there is evidence that some of the Council members considered Leaphart to be highly qualified, the Council agreed on two other "top" candidates, both of whom were white. Leaphart offers evidence that the Mayor hired her as Director of Human Resources on Friday, March 5, 2010. Thereafter, he left for a trip to Oklahoma. On Sunday, March 7, the Council held a special meeting to enact Ordinance No. 2073. The ordinance abolished the Human Resources Department, including the director position, and established a non-department head position entitled "Human Resources," employed at the will of the Council. Leaphart offers evidence that the Council had not had a Sunday meeting in at least twenty years.

The parties disagree about whether the Council knew that the Mayor had hired Leaphart. Alderman Kirchner testified in his deposition that before the Sunday meeting he was called by the personnel committee chairman, Alderman Wiley. Wiley indicated that the reason for the meeting was that the Council did not believe that the Mayor was going to hire either of the recommended candidates but would name Leaphart as the new Director of Human Resources. The parties also disagree about whether the Sunday meeting was the result of a long-term plan to eliminate the Human Resources Department. The Council met for a regularly scheduled meeting on February 18, 2010 where they discussed, *inter alia*, the following agenda item: "Consideration of Discussion to Change Human Resource Position to fall under Finance Director-Alderwoman Harris." However, that item was withdrawn.

The Mayor vetoed the new ordinance when he returned on Monday, March 8. Later that day, the Council unanimously voted to override the Mayor's veto. On March 9, the Council voted to

overturn the Mayor's hiring of Leaphart.  The Council subsequently hired one of the younger, white candidates for the newly created human resources position.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that the  moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

The parties agree that Leaphart's claims of race and age discrimination pursuant to Title VII and the ADEA are analyzed under the familiar *McDonnell Douglas* burden-shifting framework.  *See Young-Losee v. Graphic Packaging Intern., Inc.*, 631 F.3d 909, 912 (8th Cir. 2011) (Title VII); *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011) (the ADEA).  Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination.  *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008).  A prima facie case of discrimination requires proof that the plaintiff is a member of a protected class, she was qualified for an open position, she was denied the position, and the employer filled the position with a person not in the same protected class.  *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011).[2]  The burden then shifts to the City to state a legitimate, nondiscriminatory reason for not hiring her.  *Id*.  Once the City states such a reason, the burden shifts back to the plaintiff to show that the stated reason is a pretext for discrimination.

_____

[2] Although *Amini* is a failure to hire case, it is instructive here where there is evidence that the Council was trying to keep Leaphart from being hired.

3

For the purposes of this motion, the defendants concede that Leaphart can establish the first three elements of her prima facie case.  Leaphart has offered evidence that on February 18, the Council decided to leave the Human Resources Department and the director position unaltered or, at least, to postpone any changes.  Two weeks later, however, after learning that the Mayor was planning to hire Leaphart rather than the recommended younger, white candidates, the Council reversed course by assembling for an unprecedented Sunday meeting in order to eliminate the director position.  Subsequently, the Council hired one of the younger, white candidates to fill the newly created human resources position.  A jury could find that the Council went to a great deal of trouble to interfere with the Mayor's effort to hire a qualified, older, black candidate.  That finding, combined with the fact that the Council preferred younger, white candidates and filled the new human resources position with a younger, white individual, satisfies the low burden at the prima facie stage.  *Id.*; *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (en banc) (" 'The burden of establishing a prima facie case of disparate treatment is not onerous.' ") (quoting *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089,  67 L. Ed. 2d 207 (1981)).

The defendants contend that the Council met on March 7 to finalize a long-term plan to move the human resources position under the Council.  Assuming that this is a legitimate justification for eliminating the Director of Human Resources position, the burden falls on Leaphart to show that it is a pretext for discrimination.  Evidence that the Council's explanation "is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. "  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S. Ct. 2097, 2108, 147 L. Ed. 2d 105 (2000).  As noted, Leaphart offers evidence that three weeks earlier the Council had considered altering the human resources position but declined to do so at that

4

time.  Furthermore, if the purpose was merely to finalize a long-term plan, a reasonable jury could question whether it was necessary for the Council to take the unprecedented step of meeting on a Sunday.  In addition, there is evidence that the Council only decided to meet once some of its members learned that the Mayor was probably going to hire Leaphart.  A reasonable fact finder could conclude that the Council's explanation is not credible and that the Council was actually motivated by a desire to keep Leaphart from being hired.  A question of material fact remains regarding whether the Council's proffered justification is a pretext for discrimination.

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."  *Reeves*, 530 U.S. at 153, 120 S. Ct. at 2111.  On this record, the Court cannot say as a matter of law that Leaphart was not the victim of intentional discrimination.

The defendants contend that the Council members are entitled to legislative immunity with respect to Leaphart's claims against them in their individual capacities.  *See Hinshaw v. Smith*, 436 F.3d 997, 1008 (8th Cir. 2006) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998)).  The Council's decision to enact Ordinance No. 2073, abolishing the Human Resources Department and director position, is a legislative act.  However, at the March 7 meeting, the Council not only abolished the Director of Human Resources position but also established a new human resources position with substantially the same responsibilities.  At a special meeting on March 9, the Council elected to overrule the Mayor's decision to hire Leaphart instead of moving her to the new position.  The decision to terminate Leaphart rather than to assign her to the new human resources position was not a legislative act because it targeted Leaphart individually and did not "involve 'policy-making of a general purpose.' "  *In re Montgomery Cnty.*, 215 F.3d 367, 376

(3d Cir. 2000) (quoting *Carver v. Foerster*, 102 F.3d 96, 100 (3d Cir. 1996)).  Therefore, the Court declines to grant summary judgment on the basis of legislative immunity.

The defendants offer evidence that defendant Larry Holman only served on the City Council from August or September of 2010 until December 31, 2010, and was not involved in any of the actions upon which Leaphart's claims are based.  Consequently, the defendants ask the Court to dismiss Holman from this action.  Because Leaphart offers no opposition in her response, the Court will dismiss Larry Holman.

Summary judgment will not be granted on Leaphart's Arkansas Civil Rights Act claim because the same standards apply to that claim as to her federal claims.  *See* Ark. Code Ann. § 16-123-105(c) (Rep. 2006).  Similarly, the Court declines to dismiss Leaphart's wrongful discharge claim because discrimination on account of race or age is a violation of well settled public policy in Arkansas.  *See Smith v. Am. Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991); Ark. Code Ann. § 16-123-107 (Repl. 2006); Ark Code Ann. § 21-3-203 (Repl. 2004).  However, summary judgment will be granted on Leaphart's civil conspiracy claim because the Council could not conspire with itself.  *See Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 962, 69 S.W.3d 393, 407 (2002).  Leaphart argues that this claim is viable because the Council members exceeded their authority by eliminating the Director of Human Resources position "without taking a vote on her appointment."  *See id.* ("Thus, in order to sustain a claim for a civil conspiracy where agents of a corporation are involved, it is necessary to show that one or more of the agents acted outside of the scope of their employment, to render them a separate 'person' for purposes of the conspiracy.") (citing *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 445, 47 S.W.3d 866, 876 (2001)).  Although a city council has the authority to override a mayor's appointment of a department head, Ark. Code Ann. § 14-42-110,  Leaphart points to no rule, state or local, requiring a city council to confirm a mayor's

6

selection.  Nor does she point to any rule that a city council must vote to remove an individual from a position *before* enacting an ordinance eliminating that position.  Because there is no evidence that the individual Council members acted outside of their official capacities when they eliminated the Human Resources Department and director position, Leaphart's civil conspiracy claim fails as a matter of law.

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Document #15.  Summary judgment is granted on all claims against Larry Holman, and he is dismissed from the action.  Summary judgment is granted on Leaphart's civil conspiracy claim.  Summary judgment is denied in all other respects.

IT IS SO ORDERED this 7th day of February, 2012.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE